<u>NOT FOR PUBLICATION</u>                                      [Docket No. 44]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>FAVIO GARCIA, et al,<br><br>        Defendants. | Civil No. 07-3179 (RMB/KMW)<br><br>**OPINION** |

Appearances:

Louis P. DiGiaimo, Esquire
Mee Sun Choi, Esquire
Randi F. Knepper, Esquire
Joseph Ryan McCarthy, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
PO BOX 2075
Morristown, New Jersey 07962-2075
     Attorneys for Plaintiff

Stanley L. Bergman, Esquire
Bergman & Bergman
1001 Tilton Road, Suite 204
Northfield, New Jersey 08225
     Attorney for Defendants

**BUMB, United States District Judge**

THIS MATTER comes before the Court upon the Plaintiff's, American General Life Insurance Company ("American General"), motion for default judgment [Docket No. 44] rescinding, <u>ab initio</u>, a policy of life insurance issued to the deceased

1

Gerardina Garcia (the "Decedent"). American General commenced this action with the filing of a Complaint for interpleader relief on July 7, 2007. Pursuant to an Order to Deposit Sum of Money entered, on July 12, 2007, American General deposited $236,265.29 with the Clerk of the Court.

On December 4, 2007, Fabio Garcia was arrested and charged with murder, conspiracy to commit murder for hire, and theft by deception in relation to the Decedent's death. Pursuant to a Consent Order granting American General leave to amend its pleadings, on February 7, 2008, American General filed an Amended Complaint seeking the rescission, ab initio, of the Policy. On April 15, 2008, Garcia, on behalf of the Estate of the Decedent (the "Estate") and his own behalf, filed an Answer to the Amended Complaint and Counterclaim seeking payment of the death benefit under the Policy. American General filed an Answer to the Counterclaim on May 2, 2008.

During the discovery phase, American General learned that the statements and representations made in response to the questions on the insurance application were knowingly and materially false, that the individual who completed the application knowingly and intentionally failed to disclose and omitted material facts; and otherwise knowingly and intentionally failed to accurately disclose material information in response to the questions on the insurance application which, if disclosed,

would have caused the non-issuance of the Policy. Accordingly, American General, with Court approval, filed a Second Amended Complaint on October 7, 2008, asserting causes of action seeking rescission, ab initio, of the Policy on grounds of fraud, mistake of fact, and lack of contract formation. American General also asserted a cause of action under the New Jersey Insurance Fraud Prevention Act and interpleader relief. To date, the Defendants, Fabio Garcia and the Estate, have failed to answer or otherwise respond to the Second Amended Complaint. On August 19, 2009, the Clerk of the Court entered default against the Defendants. American General now moves for default judgment rescinding the insurance policy. The Defendants have not opposed the motion.

**Statement of Facts**

On May 21, 2005, an individual claiming to be the Decedent applied in writing seeking the issuance of a policy of life insurance from American General to the Decedent as the owner and named insured in the face amount of $230,000. (See generally Affidavit of Nancy Yasso). The individual claiming to be the Decedent executed Part A of the application for insurance which solicited material information pertaining to the Decedent's personal information, income, medical history and other policies of life insurance applied for or in force. In Part A, Section I of the application for insurance, the individual claiming to be the Decedent, in response to an inquiry regarding the name of the

Proposed Insured, Date of Birth, and Social Security Number, responded "Gerardina Garcia," "11/16/1962," and "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," respectively.  In Part A, Section 1, in response to an inquiry regarding Personal Income and Household Income, the individual claiming to be the Decedent represented $70,000 and $140,000, respectively.  The individual claiming to be the Decedent designated "Favio Garcia" as the primary beneficiary of the Policy.  Part A, Section 9 of the application for insurance solicited information regarding other life insurance policies in force or pending for the proposed insured.  The individual claiming to be the Decedent did not state any other policy of life insurance in force or pending, and marked "No" in response to an inquiry regarding whether the Policy being applied for may replace or change any existing life insurance policy.

 On May 21, 2005, an individual claiming to be the Decedent submitted to a paramedical examination at which time the insurance application, Part B was executed.  The paramedical examination took place at the home of the Decedent.

 On the basis of the statements and material representations made in the written application seeking the issuance of the Policy, American General issued a policy of life insurance bearing policy number YME0214798, with issue date of July 15, 2005 (the "Policy") (See Yasso Aff.)  The Policy was issued to the Decedent as the owner and named insured, designated "Favio

4

Garcia" as the primary beneficiary, and provided a death benefit in the amount of $230,000.  Id.

On April 20, 2006, within the Policy's two-year contestability period, the Decedent was murdered outside her home in Egg Harbor Township, New Jersey.  On or about September 17, 2006, American General received a Proof of Death - - Claimant's Statement executed by Fabio Garcia ("Garcia"), also known as "Favio Garcia", requesting payment of the death benefit on account of and as a consequence of the Decedent's death; the Proof of Death - - Claimant's Statement listed the policy number as "YME 0214798" and the amount of insurance as "400,000.00" (See Yasso Aff.)  Subsequently, on or about December 4, 2007, Garcia was arrested and charged with murder, conspiracy to commit murder for hire, and theft by deception in relation to the Decedent's death.

**Legal Analysis**

**A.   Default Judgment**

American General argues that it is entitled to default judgment rescinding the Policy ab initio.  The Defendants are in default as no answer or other response to the Second Amended Complaint seeking, inter alia, rescission of the Policy ab initio on the basis of equitable fraud has been filed.  On August 19, 2009, the Clerk of the Court entered default.  Twentieth Century Fox Film Corp. V. Streeter, 438 F.Supp.2d 1065, 1070 (D.Ariz.

5

2006) ("After entry of default, a court may grant a default judgment on the merits.") American General argues the application for insurance contains material misrepresentations regarding the Decedent's income, medical history, and other policies of life insurance in force that, if known, would have resulted in the non-issuance of the Policy.  The Court must now determine whether Plaintiff is legally entitled to the relief it seeks.

Under New Jersey law an insurer "may rescind a policy for equitable fraud where the false statements materially affected either the acceptance of the risk or the hazard assumed by the insurer."  Ledley v. William Penn Life Insurance Co., 138 N.J. 627, 637-38 (1995).  See also N.J.S.A. § 17B:24-3(d).  "To rescind a policy, an insurer need not show the insured actually intended to deceive."  Ledley, 138 N.J. at 635.  Moreover, the cause of death need not be causally related to the misrepresentation in the application.  See Massachusetts Mutual Life Insurance Co. v. Manzo, 122 N.J. 104, 108 (1991).

A fact that has not been truly stated or that has been withheld by an insured in an application for insurance regarding an insured's health and medical condition must be regarded as material as a matter of law "where knowledge of the truth would naturally influence the judgment of the insurer in making the contract, estimating the risk, or fixing the premium."  Parker Precision Products Co. v. Metropolitan Life Insurance Co., 407 F.

2d 1070, 1073-74 (3d Cir. 1969).  Further, as stated by the Supreme Court of New Jersey,

> [t]he prior medical history of an applicant is naturally and logically a most material matter to a life insurance company which has been asked to underwrite a death risk, and the working rule is that inquiries propounded in the applicant form, and the truthfulness and completeness of answers thereto touching a physical condition and pathological history of the applicant, are material to the risk as a matter of law and such materiality is not the subject of a finding of fact by a jury.

<u>Gallagher v. New England Mutual Life Insurance Co. of Boston</u>, 19 N.J. 14, 20-21 (1955).

American General points to several material misrepresentations made in the Policy application in response to both objective and subjective questions.  The applicant made misrepresentations in response to objective inquiries regarding the existence of other policies of life insurance, income, whether the Decedent underwent any surgery or laboratory or diagnostic tests.  Specifically, while the applicant did not disclose any other policy of life insurance on the life of the Decedent in force, the Decedent was insured by Allstate in the amount of $400,000.  In contrast to the representation that the Decedent had a household income of $140,000, documentation from the Internal Revenue Service demonstrated that the income reported by the Decedent and Garcia for the tax periods ending December 31, 2003, December 31, 2004, and December 31, 2005, was $17,717, $21,092 and $14,685, respectively.  Furthermore, while

the applicant answered "No," to inquiries regarding whether the Decedent underwent any surgery or diagnostic tests, the Decedent had undergone surgery for a breast mass on August 29, 2002, and several tests, including an EKG and CT scans. (See supporting Yasso Affidavit and Certification of Counsel).

The medical documentation received by American General after the Decedent's death also revealed several other material misrepresentations in the application for insurance regarding the Decedent's medical history. These records revealed that, within the three year period leading up to the application seeking issuance of the Policy, the Decedent presented herself to medical providers with complaints of chest pain, palpitations, diaphoresis, and nausea; Decedent underwent an EKG and was diagnosed with an "unstable angina"; the Decedent was referred to a breast clinic following a CT scan which revealed a right breast mass that needed "evaluation urgently"; on January 23, 2004, the Decedent presented herself to Jacobi Medical Center with complaints of right left quadrant pain with vomiting, diarrhea, and dysuria; and the Decedent had a history of kidney stones and an abnormal mammogram in April 2003. In addition, the medical records revealed that, in contrast to the representation in the application that neither of the Decedent's parents had heart disease and that the Decedent's mother was alive, an Admission Form dated February 25, 2003, stated that the Decedent reported

8

that her mother and father died of myocardial infarctions at the ages of 59 and 60, respectively.  Id.

American General persuasively argues that the above misrepresentations in the application for insurance are material in that, had they been disclosed and known by it at the time the Policy was applied for, American General would not have issued the Policy.  In other words, the misrepresentations in the written application influenced the judgment of American General in determining whether to assume risk applied for by the applicant.  The Supreme Court of New Jersey in Manzo interpreted the language of N.J.S.A. 17B:24-3(d) as being disjunctive; the statute states that a false statement bars "the right of recovery" if it "materially affected either the acceptance of the risk or the hazard assumed by the insurer."  Manzo, 122 N.J. at 115.  In Manzo, the Supreme Court of New Jersey rejected the Appellate Division's determination that only those misrepresentations that render an applicant uninsurable are material to the acceptance of the risk.  Id. at 115.  The Court reasoned:

> We believe that conclusion is too restrictive.  So stringent a test would be an incentive for dishonesty; it puts the dishonest applicant in a better position than the honest one.  Under such a test, an insurer would be bound unless the misrepresented disability would have precluded the issuance of the policy.  Thus, the dishonest applicant would stand to gain if the lie goes undetected and would risk nothing by lying.
>
> We believe that better test of materiality is one that

9

>encourages the applicant to be honest.  See, Longobardi v. Chubb, 121 N.J. 530, 541-542, 582 A.2d 1257.

Id.

The Manzo Court held that the proper and better test of materiality is whether a false statement in an application "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium."  Id. at 115, citing Kerpchak v. John Hancock Mt. Ins. Co., 97 N.J.L. 196, 198 (N.J. Err. & App. 1922).  The Court reasoned that "[b]y denying coverage to insureds who lie, the test encourages applicants to tell the truth."  Id.  The Court concluded:

>An insurer is entitled to relief when it relies on incorrect information provided by an insured in an insurance application if the information was material to either the insurer's decision to insure or to the terms of the contract.  As the Legislature perceived in N.J.S.A. 17B:24-3(d) the law should encourage insureds to tell the truth, not to conceal information from the insurer and gamble that they will not die of a concealed disease.

Id. at 118.

Here, there can be no dispute that the Decedent or an imposter claiming to be the Decedent made numerous material misrepresentations in executing the insurance application submitted to American General seeking the issuance of the Policy.  The applicant misrepresented her medical history, income and the existence of other policies of insuring the life of the Decedent

10

that were in force.  If the Decedent had completed the application and truthfully, candidly and accurately responded to all of the inquiries in the insurance application, disclosing that her household income was no more than $22,000, she already had $400,000 in life insurance in force, and had a history of medical concerns and abnormal test results, American General would not have issued the Policy applied for pursuant to its written underwriting standards.  As the application for insurance contains material misrepresentations that, if known, would have resulted in the non-issuance of the Policy, American General is entitled to rescission of the Policy, <u>ab initio</u>.

    Accordingly, the Court will enter an Order declaring that American General's Policy, number YME0214798, with an issue date of July 15, 2005, is rescinded <u>ab initio</u> and that American General is released and discharged from any liability whatsoever under the Policy, except that within ten days of the entry of the accompanying Order, American General shall notify the Court whether the tender of premium payments remains an issue.


Dated: September 10, 2009        s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE